**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:26-cv-01254 |
| | § | |
| IMMORTAL SNAIL, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

I. Introduction .......... 1

II. The Facts .......... 2

III. Procedural History .......... 4

IV. Legal Standard .......... 5

V. Argument .......... 6

A. Plaintiff's Failure to Sufficiently Allege Jurisdiction Precludes Injunctive Relief. .......... 7

B. Even if the Court Has Jurisdiction Over this Case, X Has Not "Clearly Carried" Its Burden to Establish All Four Elements Necessary for an Injunction. .......... 8

i. Plaintiff's undue delay alone warrants denial of an injunction .......... 10

ii. Neither an arbitral award nor an arbitral proceeding constitutes irreparable harm. .......... 12

C. Any Injunction Must Be Secured by a Significant Bond. .......... 13

VI. Conclusion .......... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADT, LLC v. Cap. Connect, Inc.*,
145 F. Supp. 3d 671 (N.D. Tex. 2015) (Fish, J.) ....................12

*All Tech Repairs, Inc. v. MMI-CPR, LLC*,
No. 3-19-CV-1051-K, 2019 WL 2286082 (N.D. Tex. May 29, 2019) (Kinkeade, J.) ....................11

*Anyadike v. Vernon Coll.*,
No. 7:15-CV-00157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) (O'Connor, J.) ....................6, 10

*City of Meridian, Miss. v. Algernon Blair, Inc.*,
721 F.2d 525 (5th Cir. 1983) ....................12, 13

*Collins v. Nat'l Football League*,
566 F. Supp. 3d 586 (E.D. Tex. 2021) ....................11

*Crossover Mkt. LLC v. Newell*,
No. A-21-CV-00640-JRN, 2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) ....................10

*Ellipse Communications, Inc. v. Caven*,
No. CIV.A.3-07-CV-1922-O, 2009 WL 497268 (N.D. Tex. Feb. 26, 2009) (O'Connor, J.) ....................11

*Fitch v. United States*,
No. 23-40131, 2024 WL 1133573 (5th Cir. Mar. 15, 2024) ....................6

*Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*,
841 F.2d 1254 (5th Cir. 1988) ....................5

*Gonannies, Inc. v. Goupair.Com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) (Lindsay, J.) ....................10, 12

*Gryphon Master Fund, L.P. v. Path 1 Network Techs., Inc.*,
No. 3:06 CV 0107 D, 2007 WL 1723703 (N.D. Tex. June 14, 2007) (Fitzwater, J.) ....................14

*Indep. Fin. Group, LLC v. Harrison*,
No. 3:24-CV-1307-L, 2025 WL 1617411 (N.D. Tex. June 6, 2025) (Lindsay, J.) ....................13

*Joudi v. Doerkin Props., Inc.*,
46 F.3d 66 (5th Cir. 1995) ....................8, 9

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir.1996) ....................13

*Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*,
115 F.4th 657 (5th Cir. 2024) ....................7, 8

*Myo, LLC v. Brull & York, LLC*,
No. 1:18-CV-370-RP, 2019 WL 136820 (W.D. Tex. Jan. 8, 2019) ....................11

*Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*,
No. CA3–88–0333–D, 1988 WL 161314 (N.D. Tex. Dec. 14, 1988)
(Fitzwater, J.) ....................14

*PaineWebber Inc. v. Hartmann*,
921 F.2d 507 (3d Cir. 1990) ....................8, 9

*Psara Energy, Ltd. v. Space Shipping, Ltd.*,
422 F. Supp. 3d 1170 (E.D. Tex. 2019) ....................13

*Rainbow Energy Mktg. Corp. v. DC Transco, L.L.C.*,
No. 23-50720, 2024 WL 3634194 (5th Cir. Aug. 2, 2024) ....................6, 7

*Saint Felix v. Company*,
No. 3:25-CV-2295-B-BN, 2025 WL 3006322 (N.D. Tex. Sept. 2, 2025) ....................8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................7

*TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*,
652 F. Supp. 2d 763 (N.D. Tex. 2009) (Fitzwater, C.J.) ....................14

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
899 F.2d 405 (5th Cir. 1990) ....................8, 9

*VanDerStok v. Garland*,
625 F. Supp. 3d 570 (N.D. Tex. 2022) (O'Connor, J.) ....................11

*Vantage Drilling Co. v. Hsin-Chi Su*,
741 F.3d 535 (5th Cir. 2014) ....................6

*Villareal v. Saenz*,
No. 520CV00571OLGRBF, 2021 WL 1940620 (W.D. Tex. May 14, 2021) ....................11, 12

*Warren v. Bank of Am., N.A.*,
717 F. App'x 474 (5th Cir. 2018) (per curiam) ....................8

*Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*,
No. CIV.A. 3:05-CV-0094D, 2006 WL 1540587 (N.D. Tex. June 6, 2006)
(Fitzwater, J.) ....................10

**Statutes**

28 U.S.C. § 1332(a) ....................................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 65(c) .......................................................................................13

Fedral Rule of Civil Procedure 7.1 ...............................................................................................7

Federal Rule of Civil Procedure 8(a)(1) .......................................................................................7

Defendant, Immortal Snail, LLC ("Defendant" or "Immortal Snail"), by and through undersigned counsel, hereby opposes Plaintiff X Corp.'s Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") (Dkt. 4), on the following grounds:

## I. **Introduction**

Plaintiff X Corp. ("X") has presented this Court with a common (and mundane) legal issue that federal courts encounter: whether certain claims are arbitrable, and who (the arbitrator or court) decides arbitrability. By waiting six months to raise this issue with this Court, filling its filings with unsupported and salacious allegations (only relevant to the parties' underlying dispute—not the arbitrability issue), and seeking the relief of a temporary restraining order ("TRO"), X has devised a way to turn the "mundane" into the "extraordinary." Neither the Court nor Defendant should be forced into a pressure cooker because of X's strategic decisions.

While X attempts to mask the run-of-the-mill nature of the legal dispute before the Court, what is clear on the face of its Complaint and Motion is that X has no justifiable explanation for waiting until now to seek injunctive relief through a request for a TRO. It relies on its own delay to claim irreparable and immediate harm. But the delay of nearly six (6) months—from the April 8, 2026, initiation of the arbitration to the September 28, 2026, initiation of this case—demonstrates that there was no immediate harm to X when the alleged harm arose and, thus, no irreparable harm. Therefore, there is no basis for entry of a TRO or preliminary injunction.

What X's Complaint also reveals is that X has not even attempted to establish this Court's subject-matter jurisdiction over this case. Despite the long-standing rule that the citizenship of an LLC's members is what determines the LLC's citizenship, X provides this Court with information about Defendant's alleged "principal place of business" in Nevis and then states, in conclusory fashion, that "complete diversity exits." Compl. (Dkt. 1) ¶¶ 18,19. X asks this Court to issue the

extraordinary relief of a TRO without first establishing jurisdiction and, in so doing, invites this Court to err.

Accordingly, Defendant opposes the entry of a TRO and further requests that the preliminary-injunction motion be addressed, if necessary, after the opportunity for expedited discovery and a normal, non-expedited briefing schedule.[1]

## II. <u>The Facts</u>

The facts underlying the parties' dispute regarding X's termination of Defendant's handles are irrelevant not only to the Motion but to the entire case before the Court. As confirmed in its Complaint, X's lawsuit seeks a "declar[ation] [that] [Immortal] Snail's claims must be brought in state or federal court in Tarrant County, Texas" and a "permanent[] stay[] [to] the arbitration." Compl. (Dkt. 1) at 30. In other words, X does not ask this Court to preside over the parties' underlying dispute. Therefore, at this stage, the Court can focus solely on the narrow legal issue the Motion presents rather than considering the merits of X's claims. But, because of the inflammatory nature of X's allegations, Defendant provides the following background to help correct the record.

In early 2025, Defendant developed an online casino and sportsbook. *See* Compl., Ex. 25 (Dkt. 1-27), at Appx. 223, ¶¶ 12–13. To be launched under the name "Duel," the casino was cryptocurrency-based and offered a highly unique feature in the online-gambling industry: The house would have no edge or advantage; instead, the "RTP" (or "return to player") from every bet was to be essentially 100%. *Id.* In connection with the launch of its new online-gambling platform, Defendant planned to extensively use X to promote, advertise, market, and develop its innovative

[1] Defendant's counsel have advised Plaintiff's counsel that they are authorized to accept service of process and are prepared to execute a waiver of service.

new platform. X is the essential resource for advertising and interacting among the online gambling community. *Id.* at Appx. 223, ¶ 14.

To promote Duel on X, Defendant selected a set of names or "handles"—the unique account usernames that start with an "@" symbol—to be purchased directly from X through its X Handle Transfer Agreement process on terms and at a price determined solely by X. *Id.* at Appx. 222–23, ¶¶ 9–11. The handles Defendant selected were @Duel, @Monarch, and @Castle (the "Handles"). *Id.* Defendant arranged to purchase the three Handles. *Id.* X invoiced and was paid a total of $480,000 for the purchase. *See* Compl., Ex. 25 (Dkt. 1-27), at Appx. 231–33, Handle Transfer Agreements (collectively, the "HTAs" or the "Agreements"). X charged $300,000 for the @Duel Handle, $80,000 for the @Monarch handle, and another $100,000 for the @Castle handle. *Id.* As the Agreements reflect, these amounts were charged by and directly paid to X. *Id.*

Defendant continued to use the Handles until October 21, 2025, when, out of the blue and with no prior notice, X unlawfully deprived Defendant of the commercially essential use of the Handles, imposing a blanket ban on the Handles and affected accounts. *Id.* at Appx. 222–23, ¶¶ 9–11, 15. For the @Monarch account, X provided a cursory notice that the account was suspended for violating the X Rules and specifically, for violating rules against "ban evasion." *Id.* at Appx. 223, ¶ 18. For the @Duel account, Defendant received no communication on the ban whatsoever. *Id.* Instead, the @Duel account suddenly disappeared without explanation. *Id.* Likewise, @Castle was banned by X without explanation. *Id.*

Defendant urgently tried to address the situation, using X's communication channels and internal appeals to learn why X had banned the Handles. *Id.* at Appx. 223, ¶ 19. In response to the notice received through the @Monarch account, several attempts were made to communicate with X and appeal the suspension through X's internal channels. *Id.* Defendant, through those appeals and communications, sought to understand the basis for the suspension and to request that it be

lifted. *Id.* at Appx. 223, ¶ 20. X, however, did not provide any substantive information in response. *Id.* at Appx. 224 ¶ 21. Defendant and its representatives tried repeatedly to communicate with X to understand the reason for the ban, to appeal its implementation, and to have it lifted. *Id.* at Appx. 223, ¶¶ 18–19. X refused to provide any substantive information in response. *Id.* at Appx. 224, ¶ 21.

In addition to the efforts of Defendant's representatives, Defendant's arbitration counsel also repeatedly tried to engage with X's legal department through X's designated means of contact, but counsel for X steadfastly refused to provide justification for the ban. *Id.* at Appx. 222, ¶ 3; *see also* **Composite Exhibit 1**, at App'x 004–11 (Defendant's counsel's letter to X of January 12, 2026; email to X of May 27, 2026; letter to X of June 2, 2026; letter to X of June 17, 2026; and letter to X of June 23, 2026 demonstrating that not only did X offer no explanation for the unlawful ban of Defendant's accounts, but, also, X steadfastly ignored Defendant's and its counsel's repeated, good-faith overtures to understand X's concerns was and determine how the Handles could be restored to the X platform).

## III. Procedural History

With no alternative but to take legal action to address the situation, Defendant initiated arbitration on April 8, 2026, pursuant to the applicable Handle Agreements. Compl. Ex. 25 (Dkt. 1-27), at Appx. 219–55. On June 2, 2026, Defendant sought focused discovery from X to understand what reason X had for its ban. *See* **Exhibit 2**, at App'x 013–20 (Defendant's June 2, 2026 First Request for Production to Respondent X Corp.). X refused to respond, instead writing to the AAA on June 5, 2026 to assert arguments substantively identical to the ones it now presents to the Court. *See* Compl. Ex. 20 (Dkt. 1-22), at Appx. 189–205.

On June 26, 2026, X wrote to the AAA, again objecting to jurisdiction: "X will not participate further in this proceeding—including, for example, by responding to the discovery

requests propounded by Immortal Snail on June 2, 2026." *See* Compl. Ex. 22 (Dkt. 1-24), at Appx. 210. On July 15, 2026, the AAA appointed an arbitrator and on August 25, 2026, he conducted a preliminary hearing. *See* Compl. Exs. 23–24 (Dkt. 1-25, 1-26), at Appx. 212–16.

On September 4, 2026, Defendant filed its verified motion with AAA, addressing (1) Defendant's pressing need for injunctive relief from X's ban and (2) the arbitrator's jurisdiction. X declined to respond, and that motion in the arbitration is now ripe for decision. *See* Mot. (Dkt. 4) at 11; Mot. Ex. S (Dkt 4-21), at Appx. 263–64.

Instead, X commenced this action on September 28, 2026, and filed its Motion the next day (September 29, 2026)—almost six months after Defendant initiated the arbitration. Compl. (Dkt. 1) at 4. Following months of arbitration proceedings and objections by X, it nevertheless made the deliberate decision to wait to seek relief from this Court until now. Indeed, only in the days leading up to the initiation of this case—months after initiation of the arbitration and nine (9) months after Defendant's counsel wrote to X—did X finally communicate substantively with Defendant's counsel, by letter dated September 15, 2026, which was apparently written to serve as an exhibit to its anticipated lawsuit. Compl. Ex. 7 (Dkt. 1-9), at Appx. 23–26. This extended delay demonstrates X's own view that there never was a threat of immediate or irreparable harm—not before and not now.

## IV. <u>Legal Standard</u>

The Fifth Circuit has "stated repeatedly that when jurisdiction depends on citizenship, citizenship must be 'distinctly and affirmatively alleged.'" *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983) ("[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference.")). Federal courts have subject-matter jurisdiction under 28 U.S.C. § 1332(a) "when the

amount in controversy is satisfied and there is complete diversity of citizenship between the parties." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). "For diversity purposes, LLCs are citizens of any state of which their members are citizens." *Rainbow Energy Mktg. Corp. v. DC Transco, L.L.C.*, No. 23-50720, 2024 WL 3634194, at *1 (5th Cir. Aug. 2, 2024) (citing *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407–08 (5th Cir. 2023)).

As this Court has explained, to obtain the "extraordinary" relief of a temporary restraining order or preliminary injunction, the movant must carry its burden on all four requirements:

> The Court may issue a preliminary injunction if the movant establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires that party seeking such relief to establish the same four elements for obtaining a preliminary injunction.

*Anyadike v. Vernon Coll.*, No. 7:15-CV-00157-O, 2015 WL 12964684, at *2 (N.D. Tex. Nov. 20, 2015) (O'Connor, J.) (internal citations omitted). "[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Fitch v. United States*, No. 23-40131, 2024 WL 1133573, at *1 (5th Cir. Mar. 15, 2024) (alteration in original) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). A delay in seeking injunctive relief "militates against a finding of irreparable harm." *Anyadike*, 2015 WL 12964684, at *3.

## V. <u>Argument</u>

The Court should deny X's request for TRO and injunctive relief because (1) Plaintiff has failed to sufficiently allege subject-matter jurisdiction, without which the Court has no authority to grant injunctive relief; (2) X's unjustified delay in filing this action precludes a showing of irreparable harm; and (3) even if X had diligently sought this Court's intervention, an arbitral

proceeding or award that must be enforced through federal-court proceedings creates no irreparable harm to X.

**A. <u>Plaintiff's Failure to Sufficiently Allege Jurisdiction Precludes Injunctive Relief.</u>**[2]

Plaintiff alleges the Court has subject-matter jurisdiction based on diversity of citizenship. Compl. (Dkt. 1), ¶ 19 (citing 28 U.S.C. § 1332). Diversity jurisdiction is only proper where there is complete diversity of citizenship among the parties. *Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024). In the United States, the citizenship of an LLC (like Defendant) is determined by the citizenship of each of its members. *Id.* (finding allegations relating to an LLC's principal place of business irrelevant and defective, precluding the court from reaching the merits).[3] The party invoking the Court's jurisdiction bears the burden of alleging the citizenship of each LLC's members. *Id.*

To establish diversity jurisdiction here, X must "'specifically allege the citizenship of every member of every LLC,' with 'clear, distinct, and precise affirmative jurisdictional allegations.'" *Rainbow Energy*, No. 23-50720, 2024 WL 3634194, at *1 (quoting *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) and *Getty Oil*, 841 F.2d at 1259)) (cleaned up). Plaintiff has failed to sufficiently allege complete diversity of citizenship, contending

---

[2] Defendant is working to confirm its exact membership details and will promptly file a Rule 7.1 disclosure and N.D. Texas Certificate of Interested Persons immediately upon doing so. Nevertheless, Defendant's obligations under FED. R. CIV. P. 7.1 "does not relieve a party that asserts diversity jurisdiction [i.e., X] from the Rule 8(a)(1) obligation to plead the grounds for jurisdiction." FED. R. CIV. P. 7.1 advisory committee's note to 2022 amendment. "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

[3] To the extent X believes the members of Defendant are irrelevant to its citizenship because it is a *Nevis* LLC, X provides no allegations, let alone legal justification, for what controls the citizenship question, as is its burden. Because X only alleges where Defendant was formed and where its principal place of business is, Defendant assumes X mistakenly applied the *corporate* test for citizenship. Compl. (Dkt. 1), ¶ 18; *see also id.*, ¶ 14 (alleging Defendant was "incorporated abroad," despite LLCs being formed, not incorporated); Mot. at 4, 12 (same).

only that "Defendant Immortal Snail, LLC is a St. Kitts & Nevis limited liability company" and that, "[o]n information and belief, its principal place of business is in Charlestown, Nevis." Compl. (Dkt. 1), ¶ 18. These allegations are irrelevant and insufficient to establish the Court's jurisdiction. *See Megalomedia*, 115 F.4th at 659; *Warren v. Bank of Am., N.A.*, 717 F. App'x 474, 475 n.4 (5th Cir. 2018) (per curiam) ("[T]he citizenship of an LLC is determined by the citizenship of its members, not its principal place of business.").

Before considering a plaintiff's request for injunctive relief, the "first question is whether the district court [has] jurisdiction." *Saint Felix v. Company*, No. 3:25-CV-2295-B-BN, 2025 WL 3006322, at *1 (N.D. Tex. Sept. 2, 2025) (Horan, M.J.) (quoting *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 342 (5th Cir. 2022)). A motion for injunctive relief alone does not confer subject-matter jurisdiction to a federal court; a party seeking a TRO or preliminary injunction must show an independent basis for jurisdiction "for the court to grant injunctive relief." *Id.* When a plaintiff has not shown "that the Court possesses jurisdiction over this lawsuit, the Court lacks the power to grant [a] motion for preliminary injunctive relief." *Id.* at *4. Unless and until X sufficiently alleges diversity of citizenship, the Court is without authority to grant the injunctive relief plaintiff seeks.

### B. <u>Even if the Court Has Jurisdiction Over this Case, X Has Not "Clearly Carried" Its Burden to Establish All Four Elements Necessary for an Injunction.</u>

Turning to the required elements for a TRO or preliminary injunction, as a threshold matter, X argues that courts focus on the first required element for injunctions in actions to enjoin arbitration, and, contends that because the parties allegedly never contracted to arbitrate, the court must enjoin arbitration on that basis alone. Mot. (Dkt. 4) at 6–7, 12. In support of its argument, X cites *United Offshore Co. v. S. Deepwater Pipeline Co.,* 899 F.2d 405 (5th Cir. 1990); *PaineWebber Inc. v. Hartmann,* 921 F.2d 507 (3d Cir. 1990); and *Joudi v. Doerkin Props., Inc.,*

46 F.3d 66 (5th Cir. 1995). First, all three of these cases concern motions for preliminary injunctions, not TROs.[4] Further, these cases, do not support the proposition that a finding of a substantial likelihood to succeed on the merits alone is sufficient to grant a TRO or preliminary injunction without consideration of the remaining three elements; rather, they establish that a court must enjoin arbitration ***if*** it determines that the moving party *has succeeded* by definitively establishing the ultimate issue—i.e., that there is no valid or enforceable arbitration agreement—*through a final judgment*. *See PaineWebber Inc.*, 921 F.2d at 511 ("If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration"); *Joudi*, 46 F.3d at *5 (5th Cir. 1995). In other words, a party can obtain a *permanent* injunction by succeeding through trial or summary judgment upon establishing that there was no valid or enforceable arbitration agreement. Such a determination is the final relief that X seeks through its Complaint's causes of actions and, thus, is premature at this stage in the litigation. Therefore, contrary to X's suggestion otherwise, X must clearly carry its burden on all four elements for a TRO and preliminary injunction.

Although X has failed to meet its burden as to each of the four elements for numerous other reasons not set out in this Response, Defendant focuses on two of the most straightforward arguments that X has not established under the irreparable-injury element.

[4] Two cases are also distinguishable for other important reasons. In *United Offshore Co.*, the Fifth Circuit declined to consider the other three factors because they were not contested by the parties. *United Offshore Co.*, 899 F.2d at 408. In *Joudi*, the Fifth Circuit found the existing arbitration agreement to be unenforceable and therefore invalid, leaving no need to address the remaining argument that the preliminary injunction was improper for other reasons, and it remanded for the entry of a *permanent* injunction. *Joudi,* 46 F.3d at *5.

**i. Plaintiff's undue delay alone warrants denial of an injunction.**

Defendant initiated the AAA Arbitration by filing a statement of claim on April 8, 2026. *See* Compl. Ex. 25 (Dkt. 1-27), at Appx. 219–55. Plaintiff's Motion was filed on September 29, 2026—almost six months later. Plaintiff's nearly six-month delay in seeking an injunction demonstrates that there is no threat of irreparable harm. *See Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (Lindsay, J.).

This delay is fatal to Plaintiff's request for both a TRO and a preliminary injunction. In *Gonannies*, the court determined—"as it did in denying Plaintiff's request for an emergency temporary restraining order"—that the plaintiff's five-to-six-month delay warranted denial of its motion for a preliminary injunction. 464 F. Supp. 2d at 609 (citing *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2nd Cir. 1995) (vacating preliminary injunction where movant waited four months to seek a preliminary injunction after filing suit); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of preliminary injunction where movant, among other things, delayed three months in making its request)).

Numerous Texas federal cases are in accord. In *Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*, No. CIV.A. 3:05-CV-0094D, 2006 WL 1540587 (N.D. Tex. June 6, 2006) (Fitzwater, J.), the Court reasoned that even the presumption of irreparable harm in the patent-infringement context could be rebutted when "undue delay 'demonstrat[es] that there is no apparent urgency to the request for injunctive relief,' and is of itself sufficient to rebut the presumption of irreparable harm." *Id.* at *5 (citations omitted). In *Anyadike*, this Court recognized the negative practical and legal effects of a movant's delay: "Anyadike's several-month delay in filing until weeks before he would have otherwise graduated from the Program not only limits the Court's ability to analyze Plaintiff's claims, it militates against a finding of irreparable harm." *Anyadike*, 2015 WL 12964684, at *3; *see also, e.g.*, *Crossover Mkt. LLC v. Newell*, No. A-21-CV-00640-JRN, 2022

WL 1797359, at *1 (W.D. Tex. Jan. 12, 2022) ("Plaintiffs' [five-month] delay in seeking injunctive relief is fatal to their request for a preliminary injunction."); *Myo, LLC v. Brull & York, LLC*, No. 1:18-CV-370-RP, 2019 WL 136820, at *8 n.8 (W.D. Tex. Jan. 8, 2019) (finding six-month delay "dramatically undermines a claim that Plaintiff is at risk of irreparable harm absent injunctive relief"); *Villareal v. Saenz*, No. 520CV00571OLGRBF, 2021 WL 1940620, at *4 (W.D. Tex. May 14, 2021) ("A long delay by plaintiff after learning of the threatened harm [] may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." (alteration in original) (quotation omitted)). Even a two-week delay in seeking injunctive relief in connection with an arbitration proceeding weighs against a finding of irreparable harm. *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 604 (E.D. Tex. 2021).

Importantly, no "good explanation" exists for X's delay. As this Court noted in *VanDerStok v. Garland*, 625 F. Supp. 3d 570 (N.D. Tex. 2022) (O'Connor, J.), an active, good-faith dialogue in the intervening months could justify a movant's delay in seeking injunctive relief. *See id.* at 585. But, that is not what occurred here. Instead, as Defendant's correspondence and the procedural history of the arbitration demonstrate, X disregarded repeated overtures by Defendant and its counsel to learn what the problem was and how the Handles could be restored to the X platform. This refusal by X to even respond to Defendant's inquiries is the antithesis of good-faith dialogue. X showed no sense of urgency that would justify seeking injunctive relief at any time before the filing of this Motion. *See also Ellipse Communications, Inc. v. Caven*, No. CIV.A.3-07-CV-1922-O, 2009 WL 497268, at *2 (N.D. Tex. Feb. 26, 2009) (O'Connor, J., accepting findings and recommendation of Kaplan, M.J.) ("No explanation has been offered to justify or excuse this [seven-month] delay. On these facts, the court finds that there is no urgency for injunctive relief and, thus, no substantial threat of irreparable harm if an injunction is not granted."); *All Tech Repairs, Inc. v. MMI-CPR, LLC*, No. 3-19-CV-1051-K, 2019 WL 2286082, at *2 (N.D. Tex. May

29, 2019) (Kinkeade, J.) (finding that the three-month delay, taken as a whole, suggested Plaintiff's urgency was not serious, despite some delay being justified by attempts to negotiate a resolution without litigation). *But cf. ADT, LLC v. Cap. Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (Fish, J.) (excusing a plaintiff's delay "because it was investigating the customer complaints in good faith").

X has known about the arbitration since the moment the Statement of Claim was filed by Defendant in April. Since then, Plaintiff has refused to participate in the arbitration and had six months to move for a stay; but it failed to do either. X has no explanation for its delay, let alone a "good" one. *See Gonannies*, 464 F. Supp. 2d at 609 n.5 (rejecting ongoing settlement discussions as a justifiable reason excusing delay); *Villareal*, 2021 WL 1940620, at *4 (rejecting the COVID-19 pandemic and "attempts to informally negotiate" as reasons excusing delay). The Court should deny the requests for TRO and injunction on this basis alone.[5]

**ii. Neither an arbitral award nor an arbitral proceeding constitutes irreparable harm.**

The Fifth Circuit has also rejected the proposition that the costs or resource expenditures of being subjected to an unwanted arbitration are sufficient to establish irreparable harm:

> Even if the parties were ordered to begin arbitration, the City could continue to challenge the claim to the arbitrator and to the courts if there was an unfavorable decision. If a legal challenge proved successful, the City obviously would not be bound by the findings or conclusions of the arbitrator. Although the City may have to suffer the expense of inappropriate arbitration, such expenditures do not constitute irreparable harm.

*City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983). Indeed, as the Court further explained, "[a]n injury is 'irreparable' only if it cannot be undone through monetary

---

[5] As the caselaw demonstrates, the nature of X's delay justifies denial of both the TRO and preliminary injunction. However, if the Court is not inclined to rule on the preliminary-injunction relief yet, X's delay justifies the denial of its expedited TRO (at the very least).

remedies." *Id.* (quoting *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). More recently, the Court in *Indep. Fin. Group, LLC v. Harrison*, No. 3:24-CV-1307-L, 2025 WL 1617411 (N.D. Tex. June 6, 2025) (Lindsay, J.), reasoned that a movant would suffer no irreparable harm "if required to arbitrate the Harrisons' claims because it would be subjected to costly discovery, motion practice, hearings, and an award in the arbitration proceeding that will have no binding effect." *Id.* at *16 (Lindsay, J.) (relying on *City of Meridian, Miss.*, 721 F.2d at 527 (5th Cir. 1983)). Arbitrating claims in a forum that even X admits it has elsewhere chosen for itself can hardly be a significant injury. *See Psara Energy, Ltd. v. Space Shipping, Ltd.*, 422 F. Supp. 3d 1170, 1174 (E.D. Tex. 2019) (denying motion to stay arbitration pending appeal on arbitrability, finding no irreparable injury in submitting "non-arbitrable issues to an arbitration tribunal for resolution"). Further, the reasons supporting the general policy in favor of arbitration undercut X's feared harm, "[s]ince swift and less costly resolution of disputes is the primary reason for an agreement to arbitrate." *City of Meridian, Miss.*, 721 F.2d at 529. Indeed, "[t]hat is a major reason why injunctions staying arbitrations are viewed with disfavor." *Id.*

### C. <u>Any Injunction Must Be Secured by a Significant Bond.</u>

Federal Rule of Civil Procedure 65(c) provides that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The Fifth Circuit recognizes "the amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court.'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). Courts exercise their discretion by adjusting the bond amount based on a particularly strong showing of the elements required for extraordinary

injunctive relief. *See TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 774 (N.D. Tex. 2009) (Fitzwater, C.J.).

Here, in the event that the Court grants injunctive relief despite X's failure to plead sufficient jurisdictional allegations, unjustified delay, and harm that is definitionally not irreparable, a significantly higher bond is proper. Given the cost of quickly retaining Texas counsel and the disruption caused by expedited motion practice, along with the ongoing adverse impact to Defendant of X's imposed ban, all while X retains the payments it received for the Handles, a bond of not less than $1 million is proper. Should any injunction or restraint order be extended or expanded, Defendant respectfully reserves the right to move the Court to increase the bond for good cause. *See Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, No. CA3–88–0333–D, 1988 WL 161314, at *3 (N.D. Tex. Dec. 14, 1988) (Fitzwater, J.); *Gryphon Master Fund, L.P. v. Path 1 Network Techs., Inc.*, No. 3:06 CV 0107 D, 2007 WL 1723703, at *8 (N.D. Tex. June 14, 2007) (Fitzwater, J.).

## VI. Conclusion

WHEREFORE, Defendant Immortal Snail requests that the Court deny Plaintiff's Motion. Alternatively, Defendant Immortal Snail requests that X's request for a TRO be denied and that the injunction motion be addressed, if at all, only after an opportunity for expedited discovery and a non-expedited briefing schedule, along with such other and further relief the Court deems just.

Respectfully submitted,

By: */s/ Leonard A. Hirsch*

**Leonard (Ladd) A. Hirsch**
Texas Bar No. 09717300
lhirsch@bradley.com
**David C. Miller**
Texas Bar No. 24110114
dmiller@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 257-9800 (Telephone)
(214) 939-8787 (Fax)

**Kevin C. Kaplan, Esq.** (pro hac vice forthcoming)
Florida Bar No. 933848
lperez@coffeyburlington.com
service@coffeyburlington.com
**Christopher E. Cheek, Esq.** (pro hac vice forthcoming)
Florida Bar No. 91363
ccheek@coffeyburlington.com
lmaltz@coffeyburlington.com
**Tori A. Simkovic, Esq.** (pro hac vice forthcoming)
Florida Bar No. 1039684
tsimkovic@coffeyburlington.com
rquijada@coffeyburlington.com
service@coffeyburlington.com

**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on October 4, 2026, on all counsel or parties of record who have appeared in this case.

By: *_/s/ Leonard A. Hirsch_*
Leonard A. Hirsch